# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 11, 2023          Decided July 7, 2023

No. 22-5105

WOODHULL FREEDOM FOUNDATION, ET AL.,
APPELLANTS

v.

UNITED STATES OF AMERICA AND MERRICK B. GARLAND, IN
HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE
UNITED STATES,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-01552)

———

*Robert Corn-Revere* argued the cause for appellants. With
him on the briefs were *Lawrence G. Walters*, *Adam S. Sieff*,
*Caesar Kalinowski IV*, *David Greene, Aaron Mackey, Corynne
McSherry*, and *Daphne Keller.*

*Christopher T. Bavitz* was on the brief for *amicus curiae*
Transgender Law Center in support of appellants.

*Lauren Gallo White* and *Brian M. Willen* were on the brief
for *amicus curiae* Center for Democracy & Technology in
support of appellants.

*Catherine Sevcenko* was on the brief for *amici curiae* COYOTE-RI, et al. in support of appellants.

*Rebecca Cleary* was on the brief for *amici curiae* Decriminalize Sex Work, et al. in support of appellants.

*Joseph F. Busa*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, and *Mark B. Stern*, Attorney.

Before: MILLETT and WALKER, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

MILLETT, *Circuit Judge*: In 2018, Congress enacted the Allow States and Victims to Fight Online Sex Trafficking Act of 2017 (commonly referred to as "FOSTA"). Pub. L. No. 115-164, 132 Stat. 1253 (2018) (codified as amended in 18 U.S.C. §§ 1591(e), 1595, 2421A and 47 U.S.C. § 230(e)(5)). Section 2421A(a) of FOSTA makes it a felony to "own[], manage[], or operate[]" an interactive computer service—for example, a website, chat room, or search engine—"with the intent to promote or facilitate the prostitution of another person[.]" 18 U.S.C. § 2421A(a). Section 2421A(b), in turn, denominates as an aggravated offense a violation of Section 2421A(a) that either "promotes or facilitates the prostitution of 5 or more persons" or is "in reckless disregard of the fact that such conduct contributed to sex trafficking" in violation of Section 1591(a) of the Trafficking Act. *Id.* § 2421A(b).

FOSTA also subjects the providers of those computer services to liability in civil and state-law criminal actions for

any third-party content they publish that violates 18 U.S.C. § 2421A or the Trafficking Victims Protection Act of 2000 ("Trafficking Act"), Pub. L. No. 106-386, 114 Stat. 1466 (codified as amended in various Sections of 8, 18, and 22 of the United States Code), denying them an immunity from lawsuits that is otherwise generally accorded to computer service providers under 47 U.S.C. § 230. FOSTA withholds immunity regardless of whether the outlawed conduct occurred before, on, or after FOSTA's enactment. 47 U.S.C. § 230(e)(5) & note.

Finally, FOSTA adds a new definitional provision to the Trafficking Act, 18 U.S.C. § 1591(e)(4), and authorizes *parens patriae* suits by States against persons who violate that same Act's prohibition of sex trafficking, *id.* § 1595(d).

The Woodhull Freedom Foundation and four other plaintiffs challenged the constitutionality of FOSTA on numerous grounds, but the district court upheld FOSTA in full.

We affirm. Neither Section 2421A of FOSTA nor FOSTA's amendments to the Trafficking Act are overbroad or unconstitutionally vague. FOSTA's clarification that Section 230 withholds immunity for violations of federal sex trafficking laws comports with the First Amendment. And the district court correctly dismissed the challenge to Section 230(e)(5)'s retroactive application.

**I**

**A**

For decades, Congress has worked to protect minors online while promoting free speech over the Internet. In 1996, Congress enacted the Communications Decency Act, Pub. L.

No. 104-104, Title V, 110 Stat. 56, 133–143 (codified in various Sections of 18 and 47 of the United States Code), which prohibited the online transmission of obscene and indecent speech. *See* 47 U.S.C. § 223(a); *see generally Reno v. ACLU*, 521 U.S. 844, 858–861 (1997).

As relevant here, the Communications Decency Act had twin aims. On the one hand, it sought to protect minors by shielding them from exposure to sexually explicit materials posted online. *See Woodhull Freedom Found. v. United States*, 948 F.3d 363, 367 (D.C. Cir. 2020) ("*Woodhull II*"). The Supreme Court ultimately struck down that portion of the Act on overbreadth grounds because it "lack[ed] the precision that the First Amendment requires when a statute regulates the content of speech." *Reno v. ACLU*, 521 U.S. at 874.

At the same time, the Act shields interactive computer services from liability for speech posted on their sites. Congress did so to "promote the continued development of the Internet and other interactive computer services" and to "preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services[.]" 47 U.S.C. §§ 230(b)(1)–(2). To that end, Section 230 of the Act immunizes providers of such computer services—like YouTube, Facebook, and Craigslist—from liability for content that is posted on their sites by third parties. *Id.* § 230(c)(1).[1]

Congress, though, limited Section 230's grant of immunity to conduct that does not independently violate federal criminal

---

[1] Section 230 also immunizes users of those same computer services. 47 U.S.C. § 230(c)(1). The immunity shield, as applied to users, is not at issue in this case.

law.  47 U.S.C. § 230(e)(1).  One such law is the Trafficking Act, which broadly outlaws sex trafficking.  In 2003, Congress authorized survivors of sex trafficking to file civil actions for violations of the Trafficking Act.    Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108-193, 117 Stat. 2875 (codified as amended in 18 U.S.C. § 1595).

Nevertheless, when sex-trafficking survivors attempted to sue the publishers of online classified advertising that allegedly helped their traffickers avoid detection, the lawsuits failed because courts found the publishers to be immune from liability under Section 230 for the third-party speech posted on their sites.  *See Woodhull II*, 948 F.3d at 367–368 (detailing Section 230's role in preventing lawsuits by survivors of sex trafficking).

**B**

Congress enacted FOSTA to strengthen protections against online sex trafficking.    In doing so, Congress underscored that Section 230 of the Communications Decency Act "was never intended to provide legal protection to websites that unlawfully promote and facilitate prostitution" or to "websites that facilitate traffickers in advertising the sale of unlawful sex acts with sex trafficking victims[.]"  47 U.S.C. § 230 note.  Congress added that "websites that promote and facilitate prostitution have been reckless in allowing the sale of sex trafficking victims and have done nothing to prevent the trafficking of children and victims of force, fraud, and coercion[.]"  *Id.*  FOSTA, Congress explained, was designed to make clear that Section 230 does not cloak "such websites" with immunity.  *Id.*

As relevant here, FOSTA changed the law in four ways.

*First*, FOSTA amended Section 1591 of the Trafficking Act to define what it means to "participat[e] in a venture." 18 U.S.C. § 1591(e)(4). Since 2015, Section 1591(a)(2) of the Trafficking Act has proscribed knowingly "benefit[ing], financially or by receiving anything of value, from participation in a venture which has engaged in" recruiting, enticing, harboring, transporting, providing, obtaining, advertising, maintaining, patronizing, or soliciting a person, while

> knowing, or, except where the act * * * is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, [or] coercion * * * will be used to cause the person to engage in a commercial sex act, or that the person [is under] the age of 18 and will be caused to engage in a commercial sex act[.]

*Id.* § 1591(a)(2).

FOSTA clarified Section 1591(a)(2)'s reach by defining "participation in a venture" as "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)[,]" which criminalizes active participation in sex trafficking. 18 U.S.C. § 1591(e)(4). Putting the two together, Section 1591(a)(2) now provides:

> Whoever knowingly— * * * benefits, financially or by receiving anything of value, from [knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)] knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination

of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

*See id.* §§ 1591(a)(2), (e)(4).

*Second*, FOSTA amended Section 1595 of Title 18 by authorizing States' attorneys general to bring civil actions against those who violate Section 1591.  18 U.S.C. § 1595(d).

*Third*, FOSTA created Section 2421A of Title 18, a brand-new felony offense.  In relevant part, that provision states:

> **(a) In General.**—Whoever, using a facility or means of interstate or foreign commerce or in or affecting interstate or foreign commerce, owns, manages, or operates an interactive computer service (as such term is defined in * * * 47 U.S.C. 230(f))[], or conspires or attempts to do so, with the intent to promote or facilitate the prostitution of another person shall be fined under this title, imprisoned for not more than 10 years, or both.

> **(b) Aggravated Violation.**—Whoever, using a facility or means of interstate or foreign commerce or in or affecting interstate or foreign commerce, owns, manages, or operates an interactive computer service (as such term is defined in * * * 47 U.S.C. 230(f))[], or conspires or attempts to do so, with the intent to promote or facilitate the prostitution of another person and—

> (1) promotes or facilitates the prostitution of 5 or more persons; or
>
> (2) acts in reckless disregard of the fact that such conduct contributed to sex trafficking, in violation of 1591(a),
>
> shall be fined under this title, imprisoned for not more than 25 years, or both.

18 U.S.C. §§ 2421A(a)–(b).

As used in Section 2421A, "interactive computer service[s]" are online platforms that "provide[] or enable[] computer access by multiple users to a computer server[.]" 47 U.S.C. § 230(f)(2). (Going forward, we will refer to interactive computer services more colloquially as "online platforms.")

Section 2421A(a) makes it a felony, punishable by up to ten years of imprisonment, to "own[], manage[], or operate[] an interactive computer service, * * * or conspire[] or attempt[] to do so" if done "with the intent to promote or facilitate the prostitution of another person[.]" 18 U.S.C. § 2421A(a).

Section 2421A(b) separately creates an aggravated offense, punishable by up to 25 years of imprisonment, for anyone who both violates Section 2421A(a) and also "promotes or facilitates the prostitution of 5 or more persons" or "acts in reckless disregard of the fact that such conduct contributed to sex trafficking" in violation of Section 1591(a) of the Trafficking Act. 18 U.S.C. § 2421A(b).

*Fourth*, FOSTA clarifies that Section 230's immunity shield does not impair or limit liability for (i) civil actions brought under Section 1595 of the Trafficking Act if the

underlying conduct violates Section 1591 of the Trafficking Act, or (ii) criminal charges brought under state law if the underlying conduct violates Section 1591 of the Trafficking Act or Section 2421A of Title 18. 47 U.S.C. § 230(e)(5).

FOSTA adds that its amendments to Section 230 "shall apply regardless of whether the conduct alleged occurred, or is alleged to have occurred, before, on, or after [FOSTA's] enactment." 47 U.S.C. § 230 note.

## C

In response to FOSTA's enactment, several online platforms removed content and deleted entire sections of their websites. *Woodhull II*, 948 F.3d at 368–369. For example, two days after Congress passed the Act, Craigslist eliminated all personal ads, including those in non-sexual categories, and named FOSTA as the reason for doing so. Other websites followed suit, and many blamed the Act's broad criminal prohibitions and severe penalties. *See* COYOTE-RI, et al., Amicus Br. A. 15 ("FOSTA changes [liability] in a way that makes sites operated by small organizations * * * much riskier to operate. [The Act] essentially says that if we facilitate the prostitution of another person we're liable. * * * [T]he problem is that 'or facilitate' is ill-defined.").

The plaintiffs in this case similarly allege that FOSTA has chilled or halted their constitutionally protected speech. Plaintiff Woodhull Freedom Foundation is an advocacy organization that supports the health, safety, and protection of sex workers. Because of the Act, Woodhull has censored its publication of information that might, in its view, be considered to promote or facilitate sex work.

Plaintiff Alex Andrews is the cofounder and organizer of several advocacy groups for sex workers. Andrews created Rate That Rescue, a website that allows sex workers to report and warn others about violence and other harmful behavior by clients. Rate That Rescue also shares information about products and services that sex workers can use, including online payment processors and contact information for rescue organizations. *See Woodhull II*, 948 F.3d at 369. Because Rate That Rescue has thousands of users, and because Andrews has alleged that she intends to use Rate That Rescue to host discussions that in her view "facilitate" sex trafficking, Andrews's conduct is arguably proscribed by FOSTA. *Id.* at 372. In addition, an organization of which Andrews is a board member canceled its acquisition and development of an electronic tool for sex workers to report violent and harmful behavior because of FOSTA.

Plaintiff Human Rights Watch is an advocacy organization that, among other things, advocates for the human rights of sex workers. In so doing, Human Rights Watch chronicles rights violations committed against sex workers and describes police tactics targeted at their work. Human Rights Watch alleges that the Act endangers its human rights advocacy work, especially its documentation of abuses against sex workers.

Plaintiff the Internet Archive captures, displays, and stores all types of historical website data and third-party material. It fears prosecution for its preservation of web pages that may later be found to violate FOSTA, and for the third-party material it hosts.

Finally, plaintiff Eric Koszyk is a licensed massage therapist. Before FOSTA, Koszyk advertised his business on Craigslist. But Craigslist removed its "therapeutic services" section after FOSTA's enactment and took down his ads,

allegedly causing Koszyk to lose revenue and a substantial number of clients.

**II**

**A**

In June 2018, Woodhull Freedom Foundation, Human Rights Watch, the Internet Archive, Andrews, and Koszyk (collectively, "Woodhull") filed a pre-enforcement facial challenge to FOSTA. Woodhull mounts several First Amendment attacks on the Act, including that it is an overbroad, content-based restriction on speech that fails strict scrutiny. Woodhull also alleges that the Act is unconstitutionally vague in violation of the Fifth Amendment and that it imposes an unconstitutional retroactive criminal penalty in violation of the *Ex Post Facto* Clause of Article I, Section 9 of the Constitution.

The district court originally dismissed the case and denied Woodhull's preliminary injunction for lack of standing. *Woodhull Freedom Found. v. United States*, 334 F. Supp. 3d 185, 203 (D.D.C. 2018) ("*Woodhull I*"), *rev'd and remanded*, 948 F.3d 363 (D.C. Cir. 2020).

This court reversed, holding that at least some plaintiffs had established standing, and remanded the case for further proceedings. *See Woodhull II*, 948 F.3d at 371–374. We held that, at a minimum, Andrews had standing because she "operates a website that allows sex workers to share information" that arguably violates Section 2421A. *Id.* at 372. The court noted that the Act could be read one of two ways. First, because Section 2421A does not define "promote" or "facilitate," and the terms are listed disjunctively, the Act could separately proscribe promoting prostitution and facilitating

prostitution. *Id.* Given that the ordinary meaning of "facilitate" is "to make easier," this court concluded that FOSTA may criminalize *any* behavior that makes unlawful sex work easier. *See id.* (quoting *United States v. Rivera*, 775 F.2d 1559, 1562 (11th Cir. 1985)) (further citation omitted). On the other hand, FOSTA could be read to use "facilitate" in its criminal law context, which would outlaw only conduct that aids and abets unlawful sex work. *Id.*

Because Andrews's website allows sex workers to share information about payment processors, the court reasoned that it faced regulation under either reading of the statute. *Woodhull II*, 948 F.3d at 372–373. For that reason, this court held that Andrews had standing to bring a pre-enforcement First Amendment challenge to FOSTA.

This court also held that Koszyk had standing because Craigslist's removal of his advertisements is traceable to FOSTA. *Woodhull II*, 948 F.3d at 374. In addition, his injury is redressable because a favorable ruling invalidating the Act would likely result in the reinstatement of personalized ads. *Id.* Because Andrews and Koszyk established standing, the court did not evaluate whether the three institutional plaintiffs also had standing. *Id.* at 371.[2]

**B**

On remand, the district court granted the Government's motion for summary judgment and denied Woodhull's cross-motion, holding that the Act is not unconstitutional under the First or Fifth Amendments. *Woodhull Freedom Found. v. United States*, No. CV 18-1552 (RJL), 2022 WL 910600, at *1

---

[2] Judge Katsas filed an opinion concurring in part and concurring in the judgment.

(D.D.C. March 29, 2022) ("*Woodhull III*"). The district court found that FOSTA is not overbroad if "promote or facilitate" is read in its criminal law context. *Id.* at *5–6 (quoting 18 U.S.C. § 2421A(a)). When read that way, the court reasoned, FOSTA does not target advocacy, but instead is narrowly tailored to target "services that are owned, operated, or managed with the intent to aid, abet, or assist" acts of prostitution. *Id.* at *6. On that same basis and in light of FOSTA's scienter requirements, the district court rejected Woodhull's vagueness challenge. *Id.* at *8–9.

As for the amendment of Section 230, the district court found no constitutional basis for the immunity Woodhull claimed, and it rejected Woodhull's challenge based on content and viewpoint discrimination on the ground that FOSTA does not regulate speech. *Woodhull III*, 2022 WL 910600, at *9. Finally, the district court dismissed Woodhull's *Ex Post Facto* Clause challenge to FOSTA's effective date. *Id.* at *11. That provision allows civil liability under Section 1595 of the Trafficking Act and state criminal liability against online platforms for conduct that violates FOSTA and applies even if the conduct occurred before FOSTA's enactment. 47 U.S.C. § 230 note. The only actors who can enforce that provision are private plaintiffs and state law enforcement officers. *Id.* § 230(e)(5)(C). Because the named defendants in this pre-enforcement challenge are all federal officials who cannot bring lawsuits under Section 230(e)(5)(C), the district court ruled that it could not provide Woodhull with a remedy for its *Ex Post Facto* Clause claim. *Woodhull III*, 2022 WL 910600, at *11.

### III

Woodhull timely filed a notice of appeal. We have jurisdiction under 28 U.S.C. § 1291. We review the district

court's grant of summary judgment *de novo*. *See Edwards v. District of Columbia*, 755 F.3d 996, 1000 (D.C. Cir. 2014). Questions of statutory interpretation and constitutional law are likewise reviewed *de novo*. *See Blackman v. District of Columbia*, 456 F.3d 167, 176 (D.C. Cir. 2006); *United States v. Bronstein*, 849 F.3d 1101, 1106 (D.C. Cir. 2017).

**IV**

Woodhull levels multiple First and Fifth Amendment challenges to FOSTA. None of them succeeds.

**A**

Woodhull argues that FOSTA's amendment of Section 1591(e)(4) of the Trafficking Act to define "participation in a venture" is unconstitutionally overbroad under the First Amendment. We disagree.

"[A] statute is facially invalid [under the overbreadth doctrine] if it prohibits a substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 292 (2008). Invalidation for overbreadth is "strong medicine" that is not to be "casually employed." *Id.* at 293 (citations and quotation marks omitted). Accordingly, courts "vigorously enforce[]" the requirement that any "overbreadth be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Id.* at 292 (citations omitted); *see United States v. Stevens*, 559 U.S. 460, 473 (2010); *Initiative & Referendum Inst. v. United States Postal Serv.*, 417 F.3d 1299, 1312–1313 (D.C. Cir. 2005).

To determine if Section 1591(e)(4) is overbroad, we must first construe the provision's meaning, for "it is impossible to determine whether a statute reaches too far without first

knowing what the statute covers." *Williams*, 553 U.S. at 293; *see United States v. Hansen*, No. 22-179, slip op. at 5 (U.S. June 23, 2023) (same). So we start, as we must, with the statutory text. *See Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1055–1056 (2019).

Recall that Section 1591(a) outlaws knowingly benefiting from "participation in a venture" that one knows has engaged in sex trafficking. 18 U.S.C. § 1591(a)(2). FOSTA defines "participation in a venture" as "knowingly assisting, supporting, or facilitating [sex trafficking]." *Id.* § 1591(e)(4). Woodhull argues that Section 1591(e)(4) is overbroad because the operative verbs—assisting, supporting, or facilitating—are broad and potentially sweeping in their reach. That is incorrect.

Standing alone, verbs like "assisting" and "facilitating" can be broad in their reach. But we read statutory terms in context, not in isolation. *See Williams*, 553 U.S. at 294. When read together, with each word drawing meaning from the other, the string of verbs "assisting, supporting, or facilitating" is most naturally understood to refer to aiding and abetting sex trafficking. After all, the word assist means "to lend aid; to help." *See Assist*, WEBSTER'S NEW INTERNATIONAL DICTIONARY 167 (2d ed. 1954) (def. 2); *see also* OXFORD ENGLISH DICTIONARY 715 (2d ed. 1989) (def. 1) ("An act of assistance; aid, help."); AMERICAN HERITAGE DICTIONARY 108 (5th ed. 2018) (def. 1) ("To give help or support to[.]"). Similarly, "support" commonly means "assist" or "help[.]" *Support*, MERRIAM-WEBSTER DICTIONARY 1256 (11th ed. 2014) (def. 2 b (1)); OXFORD ENGLISH DICTIONARY 257 (2d ed. 1989) (def. 1. a.) ([A]ssistance[.]").

In addition, "assist" is commonly used by Congress as part of aiding-and-abetting language. *See, e.g.*, 8 U.S.C. § 1227(a)(1)(E) ("Any alien who * * * knowingly has

encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law is deportable."); 15 U.S.C. § 3057(a)(2)(K) ("Assisting, encouraging, aiding, abetting, conspiring, covering up, or any other type of intentional complicity involving a safety, performance, or anti-doping and medication control rule[.]"); 18 U.S.C. § 3014(a) (special assessment for persons who aid and abet immigration violations unless "the person induced, assisted, abetted, or aided" a child, spouse, or parent); 26 U.S.C. § 6701(a) (applying to "[a]ny person—(1) who aids or assists in, procures, or advises with respect to, the preparation or presentation of any portion of a return, affidavit, claim, or other document"); 43 U.S.C. § 1064 (punishing any person "who shall aid, abet, counsel, advise, or assist in any violation hereof").

Given the company it keeps in Section 1591(e)(4), "facilitating" similarly connotes helping to make sex trafficking happen—that is, aiding and abetting the offense. *See Facilitation*, BLACK'S LAW DICTIONARY (10th ed. 2014) (def. 2) ("The act or an instance of aiding or helping; esp., in criminal law, the act of making it easier for another person to commit a crime.").

The Supreme Court has come to the same conclusion. Most recently, the Court explained that "[f]acilitation—also called aiding and abetting—is the provision of assistance to a wrongdoer with the intent to further an offense's commission." *Hansen*, slip op., at 6. Likewise, in *Abuelhawa v. United States*, 556 U.S. 816 (2009), the statute at issue made it "a felony 'to use any communication facility in committing or in causing or facilitating' certain felonies prohibited by" the Controlled Substances Act, *id.* at 818 (quoting 21 U.S.C. § 843(b)). There the Court held that, when used that way, the term "facilitate" had "comparable scope" to aid and abet. *Id.*

at 821. As the Second Circuit has explained, when Congress uses "'facilitate' * * * to describe an action distinct from 'committing' a crime, its meaning is commonly limited to actions taken to assist someone else's crime." *United States v. Desposito*, 704 F.3d 221, 228 n.8 (2d Cir. 2013) (emphasis omitted); *see id.* (citing *Abuelhawa*, 556 U.S. at 821, for the proposition that "'facilitate' has an 'equivalent meaning' to 'aid,' 'abet,' and 'assist'").

Likewise, here, Section 1591(e)(4) uses "facilitates" to describe a criminal act distinct from a direct violation of the law. *Compare* 18 U.S.C. § 1591(a)(1), *with id.* §§ 1591(a)(2) & (e)(4). And by placing "facilitate" alongside "assist" and "support," Congress framed it in a manner that indicates an aiding-and-abetting offense.

In sum, reading Section 1591(e)(4)'s definition of "participation in a venture" in light of its context and placement in the statutory scheme, the definition permissibly prohibits aiding and abetting a venture that one knows to be engaged in sex trafficking while knowingly benefiting from that venture. We thus hold that the provision does not have the expansive scope that Woodhull fears, but instead, proscribes only speech that falls within the traditional bounds of aiding-and-abetting liability, which is not a form of speech protected by the First Amendment. *See Stevens*, 559 U.S. at 468 (First Amendment allows restrictions on the content of "speech integral to criminal conduct") (citations omitted); *National Org. for Women v. Operation Rescue*, 37 F.3d 646, 656 (D.C. Cir. 1994) ("That 'aiding and abetting' of an illegal act may be carried out through speech is no bar to its illegality."); *see also Hansen*, slip op. at 17 ("Section 1324(a)(1)(A)(iv) reaches no further than the purposeful * * * facilitation of specific acts known to violate federal law. So understood, the statute does not 'prohibi[t] a substantial amount of protected speech' relative to

its 'plainly legitimate sweep.'") (quoting *Williams*, 553 U.S. at 292).

**B**

Woodhull also argues that Sections 2421A(a) and (b)(1) of FOSTA are overbroad because the phrase "promote or facilitate" has a variety of meanings, many of which include protected speech, such as general advocacy and the provision of safety and health information. The Government, on the other hand, contends that "promote or facilitate" should be read to mean aid or abet. The Government is correct. Sections 2421A(a) and (b)(1) of FOSTA are not unconstitutionally overbroad under the First Amendment.

**1**

Start with the statutory text. Section 2421A(a) provides:

> Whoever, using a facility or means of interstate or foreign commerce or in or affecting interstate or foreign commerce, owns, manages, or operates an interactive computer service (as such term is defined in * * * 47 U.S.C. § 230(f))[], or conspires or attempts to do so, with the intent to promote or facilitate the prostitution of another person shall be fined under this title, imprisoned for not more than 10 years, or both.

18 U.S.C. § 2421A(a).

Section 2421A(a)'s *mens rea* is clear: An intent to promote or facilitate the prostitution of another person. As we have already held, "'promote' and 'facilitate,' when considered in isolation, 'are susceptible of multiple and wide-ranging meanings.'" *Woodhull II*, 948 F.3d at 372 (quoting and citing

*Williams*, 553 U.S. at 294).   But contrary to Woodhull's assertion, when read in context, Section 2421A(a)'s *mens rea* requirement is constitutional.

Section 2421A is a criminal statute and, as the district court noted, "promoting prostitution" has a distinct meaning in criminal law.  *Woodhull III*, 2022 WL 910600, at *6.  For example, Black's Law Dictionary defines "promoting prostitution" as "[t]he act or offense of recruiting a prostitute, finding a place of business for a prostitute, or soliciting customers for a prostitute."  *Promoting Prostitution*, BLACK'S LAW DICTIONARY (10th ed. 2014).[3]

That specialized meaning is important because, "when Congress 'borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word.'"  *Hansen*, slip op. at 9–10 (quoting *Morissette v. United States*, 342 U.S. 246, 263 (1952)).  So when read within its traditional criminal law context, Section 2421A(a)'s prohibition on promoting the prostitution of another person proscribes owning, managing, or operating an online platform with the intent to recruit, solicit,

---

[3]  The definition of "promoting prostitution" directs the reader to the first definition of pandering.  *Promoting Prostitution*, BLACK'S LAW DICTIONARY (10th ed. 2014).  The first definition of pandering states: "[t]he act or offense of recruiting a prostitute, finding a place of business for a prostitute, or soliciting customers for a prostitute. — Also termed *promoting prostitution*."  *Pandering*, BLACK'S LAW DICTIONARY) (10th ed. 2014) (def. 1).

or find a place of business for a sex worker—that is, to aid and abet prostitution.[4]

While "facilitating prostitution" has not been so defined, the context in which it is used in Section 2421A(a) similarly narrows its reach to additional forms of aiding and abetting that go beyond the recruitment, solicitation, or finding of a place of business, which "promote" already covers.

As a preliminary matter, the Supreme Court explained in *Hansen* that the word "facilitate" is a synonym for aiding and abetting when that word is used in the context of criminal statutes. *See Hansen*, slip op. at 6 ("Facilitation—also called aiding and abetting[.]"). The Court further observed that facilitation is a "longstanding criminal theor[y] targeting those who support the crimes of a principal wrongdoer." *Id.* So it seems clear that, in this statute, "facilitating prostitution" is most naturally read to mean aiding and abetting prostitution.

---

[4] That is also the sense in which "promoting prostitution" is used in several state criminal statutes and the Model Penal Code. *See, e.g.*, 18 PA. CONS. STAT. § 5902(b) (2022) (defining "promoting prostitution" as, among other things, "owning * * * a house of prostitution," "procuring an inmate for a house of prostitution[,]" and "inducing or otherwise intentionally causing another to become or remain a prostitute"); OHIO REV. CODE ANN. § 2907.22(A) (West 2023) (To "promote prostitution" is, among other things, to "establish * * * a brothel," to "[s]upervise, manage, or control the activities of a prostitute in engaging in sexual activity for hire," or to "induce or procure another to engage in sexual activity for hire"); 720 ILL. COMP. STAT. ANN. 5/11-14.3(a)(2) (West 2023) (A person "commits promoting prostitution" by, among other things, "profit[ing] from prostitution by: compelling a person to become a prostitute; [or] arranging or offering to arrange a situation in which a person may practice prostitution[.]"); MODEL PENAL CODE § 251.2 (similar).

Notably, elsewhere in FOSTA, "facilitate" appears in the company of other aiding-and-abetting verbs, suggesting that Congress meant to carry that sense forward into Section 2421A. *See* Section IV.A., *supra*. So too here: "[F]acilitate" appears alongside "promote" and is directly tied to the criminal offense of prostituting another person, so reading "facilitate" to mean aiding and abetting makes textual sense. *See National Postal Policy Council v. Postal Regul. Comm'n*, 17 F.4th 1184, 1191 (D.C. Cir. 2021) ("[A] standard principle of statutory construction provides that identical words and phrases within the same statute should normally be given the same meaning.") (quoting *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007)), *cert. denied*, 142 S. Ct. 2868 (2022).

What is more, the phrase "promote or facilitate" is often used as the *mens rea* for accomplice liability in the Model Penal Code and state aiding-and-abetting statutes. For example, the Model Penal Code defines an accomplice as a person who aids or agrees with another in planning or committing a crime "with the purpose of promoting or facilitating the commission of the offense[.]" MODEL PENAL CODE § 2.06(3)(a).

State aiding-and-abetting statutes mirror this language by defining aiding and abetting as engaging in a circumscribed act with the purpose of "promoting or facilitating" a crime. *See, e.g.*, ALASKA STAT. § 11.16.110(2)(B) (2022); COLO. REV. STAT. § 18-1-603 (2023); DEL. CODE. ANN. tit. 11, § 271 (2023); 720 ILL. COMP. STAT. 5/5-2 (2022); N.J. STAT. ANN. § 2C:2-6 (West 2023); 18 PA. CONS. STAT. § 306 (2023). Federal criminal law also employs a similar phrase in the Travel Act, which in part outlaws traveling with the intent to "promote or * * * facilitate the promotion" of unlawful activity. 18 U.S.C. § 1952(a)(3); *cf. Urena-Ramirez v. Ashcroft*, 341 F.3d 51, 54 (1st Cir. 2003) (conduct underlying

promotion of unlawful activity was tantamount to aiding and abetting).[5]

**2**

In addition to employing "promotes or facilitates" in an aiding-and-abetting context, Section 2421A(a) uses a very specific criminal object that itself narrows the reach of "facilitates." Congress, after all, did not use "facilitate" or "facilitate prostitution" in isolation. Instead, the statute outlaws "facilitat[ing] * * * the prostitution of another person." 18 U.S.C. § 2421A(a). By placing both "facilitate" and "promote" in relation to the same object—namely "the prostitution of another person"—Congress signaled that "facilitate" should carry the same criminal-law meaning of aiding and abetting the prostitution of another as the companion phrase "promotes" prostitution does, with "facilitates" capturing those forms of aiding and abetting not covered by the verb "promotes." *See Woodhull II*, 948 F.3d at

---

[5] The Model Penal Code and state statutes also employ the phrase "promote or facilitate" to define the *mens rea* in other criminal offenses such as solicitation and conspiracy. *See, e.g.*, MODEL PENAL CODE § 5.02(1) (solicitation occurs if a person commands, encourages, or requests another person to commit a crime "with the purpose of promoting or facilitating its commission"); *id.* § 5.03(1)(a) (conspiracy is the act of agreeing to aid another in the planning or commission of a crime "with the purpose of promoting or facilitating its commission"); ARIZ. REV. STAT. ANN. § 13-1002 (2023) (mirroring the Model Penal Code's definition of solicitation); KY. REV. STAT. ANN. § 506.030 (West 2023) (solicitation); PA. CONS. STAT. § 902(a) (2023) (solicitation); KAN. STAT. ANN. § 21-5303 (2022) (solicitation); 18 PA. CONS. STAT. § 903(a) (2023) (mirroring the Model Penal Code's definition of conspiracy); N.J. STAT. § 2C:5–2(a) (West 2023) (conspiracy); MO. REV. STAT. § 562.014(1) (2023) (conspiracy); HAW. REV. STAT. § 702-222 (2023) (conspiracy).

372 ("'[F]acilitate' could be interpreted as a synonym for terms like 'aid,' 'abet,' and 'assist,' in which case the term's meaning would be limited by the background law of aiding and abetting.") (formatting modified); *see also Williams*, 553 U.S. at 295 (the meaning of "facilitate" can be narrowed by neighboring words). In that way, "promote or facilitate prostitution of another person" encompasses both actions that count as promoting prostitution—like running a "prostitution business," or "procur[ing] a prostitute for a patron," *see* N.J. STAT. ANN. § 2C:34–1(a)(4) (West 2023)—and other actions that aid and abet prostitution, like getting someone addicted to drugs, stealing their money or passports, or threatening them against leaving.

Section 2421A(a)'s object—"the prostitution of another person"— also focuses the otherwise potentially broad reach of "facilitates." 18 U.S.C. § 2421A(a). Notably, that statutory phrasing does not proscribe facilitating prostitution more generally, which could extend to speech arguing for the legalization of prostitution or that discusses, educates, or informs about prostitution. The person "being prostituted" (in Congress's words) is the object of the facilitation and the offense of being prostituted. *See Williams*, 553 U.S. at 298–299 ("[T]here remains an important distinction between a proposal to engage in illegal activity and the abstract advocacy of illegality."). The language bespeaks something done to a particular person—aiding their prostitution by someone else or some force independent of the person being prostituted. *Prostitution*, MERRIAM-WEBSTER DICTIONARY (11th ed. 2014) (def. 2) ("The state of being prostituted."); *see also Williams*, 553 U.S. at 300 (While the First Amendment does not allow criminalizing "abstract advocacy," it does permit outlawing "the recommendation of a particular piece of purported child pornography with the intent of initiating a transfer."). That understanding also maps onto Congress's intent in FOSTA to

deny protection to "websites that facilitate traffickers in advertising the sale of unlawful sex acts with sex trafficking victims[.]" 47 U.S.C. § 230 note.

This understanding of "facilitate the prostitution of another person" likewise parallels the definition of "promote prostitution" employed in the Model Penal Code and state statutes, adopting it as actions that "encourag[e], induc[e] or otherwise purposely caus[e] another to become or remain a prostitute[.]" MODEL PENAL CODE § 251.2(2)(c); *see also* note 4, *supra*.  In that way, "facilitate the prostitution of another person" encompasses actions that cause a specific person to "be prostituted" or helps to orchestrate their prostitution.

We therefore hold that Section 2421A(a)'s mental state requirement does not reach the intent to engage in general advocacy about prostitution, or to give advice to sex workers generally to protect them from abuse.  Nor would it cover the intent to preserve for historical purposes webpages that discuss prostitution.  Instead, it reaches a person's intent to aid or abet the prostitution of another person.  That reading also makes sense in a statute that targets prostitution alongside sex trafficking, and seeks to eradicate the use of online platforms when they contribute to sex work that is compelled by "force, fraud, and coercion[.]"  47 U.S.C. § 230 note.

Undoubtedly, the term "facilitate" could be read more broadly.  *See Woodhull II*, 948 F.3d at 372.  But nothing in Section 2421A(a) compels us to read "facilitate" that way. Doubly so when a more expansive reading could raise grave constitutional concerns.  *See Judicial Watch, Inc. v. United States Secret Serv.*, 726 F.3d 208, 226 (D.C. Cir. 2013) (canon of constitutional avoidance requires courts to "interpret[] statutes to avoid deciding difficult constitutional questions where the text fairly admits of a less problematic construction")

(quoting *Public Citizen v. Department of Justice*, 491 U.S. 440, 455 (1989)). Rather, as the Supreme Court emphasizes, we must adopt any "fairly possible" reading that assures the constitutionality of the text. *Hansen*, slip op. at 16 (quoting *Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018)). And that reading is plainly available here, especially when "facilitate" is read as a companion to the verb "promote," and with the very specific object of "the prostitution of another person."

**3**

Woodhull also argues that Section 2421A(b)(1) is substantially overbroad, just like Section 2421A(a). Because we have already concluded that the provision's *mens rea* clause, which is identical to that in subsection (a), can be read narrowly to fall within constitutional bounds, *see* Sections IV.B.1–2., *supra*, that challenge fails.

**C**

Woodhull separately argues that certain portions of FOSTA are void for vagueness. In particular, Woodhull objects to Section 1591(e)(4)'s definition of "participation in a venture," Section 2421A's *mens rea* clause, Section 2421A(b)(2)'s aggravated offense provision, and Section 230(e)(5)(A)'s scienter requirement. All of Woodhull's challenges fail.

"Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment." *Williams*, 553 U.S. at 304. A law is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Id.* "What renders a statute

vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *Id.* at 306. That concern takes no root here.

*First*, there is no relevant indeterminacy in Section 1591(e)(4)'s definition of "participation in a venture[,]" or in Section 2421A's *mens rea* clause. Instead, as explained above, conventional tools of statutory construction show that both provisions capture traditional aiding-and-abetting liability. *See Bronstein*, 849 F.3d at 1106 ("A statute's vagueness is either susceptible to judicial construction or is void for vagueness based on the application of traditional rules for statutory interpretation."). That long-settled standard for criminal liability puts persons on fair notice that aiding and abetting a group engaged in sex trafficking or acting with the intent to aid and abet the prostitution of another person is prohibited. *See Hansen*, slip op. at 6 (concept of facilitation is a "longstanding criminal theor[y]"). Nothing in Section 1591(e)(4)'s definition of participating in a venture or in Section 2421A's *mens rea* depends on the type of subjective or wholly discretionary or indiscernible judgments that courts have struck down as unconstitutionally vague. *See Williams*, 553 U.S. at 306 (terms like "annoying" or "indecent" lack sufficient objective content to provide fair notice).

*Second*, Woodhull argues that Section 2421A(b)(2) is unconstitutionally vague because it imposes liability on anyone who acts in "reckless disregard" of the fact that their conduct "contributed to sex trafficking" in violation of Section 1591 of the Trafficking Act without defining those phrases. Woodhull is incorrect.

For one, "reckless disregard" is a commonly used *mens rea* with a settled criminal law meaning. *See Borden v. United*

*States*, 141 S. Ct. 1817, 1824 (2021) ("A person acts recklessly, in the most common formulation, when he 'consciously disregards a substantial and unjustifiable risk' attached to his conduct, in 'gross deviation' from accepted standards.") (quoting MODEL PENAL CODE § 2.02(2)(c)).

In addition, while "contributes to" sex trafficking can range from helping to bring about sex trafficking to aiding and abetting sex trafficking, the breadth of the standard does not make it vague. *See Williams*, 553 U.S. at 304; *see also Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) ("[T]he fact that a statute can be 'applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth.'") (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 499 (1985)). Nor does its operation turn on wholly discretionary and unpredictable judgments. *See Contribute*, AMERICAN HERITAGE DICTIONARY 399 (5th ed. 2016) (def. 2) ("[T]o help bring about a result; act as a factor[.]"); WEBSTER'S NEW WORLD 324 (5th ed. 2014) (def. 3) ("[T]o give or furnish (knowledge, ideas, etc.)—to have a share in bringing about (a result); be partly responsible for[.]"); *Williams*, 553 U.S. at 304. As such, the provision is not unconstitutionally vague.

*Third*, Section 230(e)(5)(A)'s scienter requirement likewise passes constitutional muster. Recall that Section 1595 of the Trafficking Act allows survivors of sex trafficking to bring a civil action against a perpetrator or anyone who "knowingly benefits, * * * from participation in a venture which that person knew or should have known has engaged in [sex trafficking]." 18 U.S.C. § 1595(a). At the same time, Section 230 broadly immunizes providers of online platforms from civil liability for content posted on their platforms by third parties. 47 U.S.C. § 230(c).

In FOSTA, Congress clarified that online platforms sued in civil actions under Section 1595 do not enjoy Section 230 immunity "if the conduct underlying the claim constitutes a violation of section 1591"—that is, conduct that involves either directly engaging in sex trafficking or knowingly benefiting from participation in a venture that one knows has engaged in sex trafficking, 18 U.S.C. § 1591. *See* 47 U.S.C. § 230(e)(5)(A).

While both Sections 1591 and 1595 prohibit "participation in a venture" that has engaged in sex trafficking, Section 1595's civil liability provision does not explicitly specify a *mens rea* for "participation in a venture[.]" While the statutory text is not explicit and a few initial rulings were contradictory, court rulings are now consistent that Section 1595 requires an actual knowledge *mens rea* for participation in a venture.[6]

Woodhull points to that evolution in case law as evidence that the provision is unconstitutionally vague. But the fact that

---

[6] Initially, while two courts required actual knowledge, two others had held that constructive knowledge sufficed. *Compare Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1249–1251 (S.D. Fla. 2020) (actual knowledge), *and J.B. v. G6 Hosp., LLC*, No. 19-CV-07848-HSG, 2021 WL 4079207, at *5 (N.D. Cal. 2021*), aff'd sub nom. J.B. v. Craigslist, Inc.*, No. 22-15290, 2023 WL 3220913 (9th Cir. May 3, 2023) (actual knowledge), *with Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 836 (constructive knowledge), *adhered to on denial of reconsideration*, 574 F. Supp. 3d 760 (C.D. Cal. 2021), *and Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 920 (N.D. Cal. 2021) (constructive knowledge), *aff'd in part, rev'd in part and remanded sub nom. Doe #1 v. Twitter, Inc.*, No. 22-15103, 2023 WL 3220912 (9th Cir. May 3, 2023), *and abrogated by Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137 (9th Cir. 2022). The Ninth Circuit has since ruled that actual knowledge is required, *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1141, 1145 (9th Cir. 2022), and so all courts to have decided the issue thus far are now in alignment.

a statutory construction question may be difficult or unresolved does not make the law unconstitutionally vague. Otherwise, countless laws would be invalidated. "[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Williams*, 553 U.S. at 304 (quoting *Ward v. Rock Against Racism*, 49 U.S. 781, 794 (1989)). Rather, a statute is unconstitutionally vague only "if, applying the rules for interpreting legal texts, its meaning specifies no [determinable] standard of conduct at all." *Bronstein*, 849 F.3d at 1107 (formatting modified).

Section 230(e)(5)(A) suffers from no such problem. Principles of statutory construction have proven up to the task of interpreting that provision. And whatever *mens rea* is required, it does not turn on subjective, unascertainable, or wholly discretionary judgments, or on the absence of any standard at all. *See Williams*, 553 U.S. at 304. That suffices to foreclose Woodhull's vagueness challenge. *See Bronstein*, 849 F.3d at 1107 ("[A] statutory term is not rendered unconstitutionally vague because it 'do[es] not mean the same thing to all people, all the time, everywhere.'") (quoting *Roth v. United States*, 354 U.S. 476, 491 (1957)); *see also United States v. Kernell*, 667 F.3d 746, 754 (6th Cir. 2012) ("[T]he fact that different courts have interpreted a statute differently does not make the statute vague—if that were true, a circuit split over the interpretation of a criminal statute would by definition render the statute unconstitutional.").

**V**

Woodhull also argues that Section 4(b) of FOSTA runs afoul of the Constitution's prohibition of *ex post facto* laws. *See* U.S. CONST. Art. I, § 9, cl. 3. Section 4(b) provides that the amendments to Section 230(e)(5)'s immunity provision, which exclude criminal sex trafficking conduct, "shall apply

regardless of whether the conduct alleged occurred, or is alleged to have occurred, before, on, or after" FOSTA's enactment. 47 U.S.C. § 230 note. Woodhull argues that Section 4(b) violates the *Ex Post Facto* Clause because it allows private parties and States to prosecute online platforms for third parties' speech on their sites even when that speech predated FOSTA's enactment. Woodhull seeks a declaration that the Act violates the *Ex Post Facto* Clause and a permanent injunction forbidding the defendants to enforce that provision. Compl. at 50–51, J.A. 61–62.

Woodhull's argument does not get out of the starting gate. The only persons who could even arguably violate the *Ex Post Facto* Clause by prosecuting the state-law actions authorized by Section 230(e)(5)(C) are state officials and private parties. None of the federal defendants whom Woodhull has sued have any ability or authority to bring the state-law actions that Section 230(e)(5)(C) authorizes. So there is no possible conduct by these federal defendants that a court could declare unconstitutional or enjoin as unlawful on *ex post facto* grounds. Nor does the complaint name any state or private defendants. A pre-enforcement declaratory judgment cannot be issued against defendants who do not enforce the challenged provision of law. *See California v. Texas*, 141 S. Ct. 2104, 2116 (2021) (denying declaratory relief when "[t]here is no one, and nothing, to enjoin[]"); *see also Haaland v. Brackeen*, No. 21-376, slip op. at 30–31 (U.S. June 15, 2023) (declining request for injunctive relief and declaratory judgment against federal officials where "'[t]here is no federal official who administers [the statute] or carries out its mandates' * * * [and] state officials are nonparties who would not be bound by the judgment") (quoting Brief for Individual Pet'rs at 63, *Haaland v. Brackeen* (No. 21-376)).

Usually, dismissal with prejudice for failure to name a proper defendant is granted only if "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Jarrell v. United States Postal Serv.*, 753 F.2d 1088, 1091 (D.C. Cir. 1985) (quoting *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962)). But Woodhull never asked the district court (or this court) for the opportunity to amend the complaint and add a proper defendant for the *ex post facto* claim. With Woodhull having made no effort to substitute in a proper party, the district court did not abuse its discretion in dismissing the *ex post facto* claim without allowing leave to amend. *See Atchinson v. District of Columbia*, 73 F.3d 418, 426 (D.C. Cir. 1996) ("[W]e review district court decisions under Rule 15(a) for abuse of discretion.").

## VI

Woodhull brings an additional challenge to the Act's amendment of Section 230. Prior to FOSTA, Section 230 withheld immunity for online platform owners, managers, and operators if the content posted on the platform violated federal criminal law. *See* 47 U.S.C. § 230(e)(1). FOSTA clarified that Section 230's immunity carve-out includes civil liability in private actions under Section 1595 of the Trafficking Act, 18 U.S.C. § 1595, and state criminal liability if the underlying conduct violates Section 1591 of the Trafficking Act, *id.* § 1591, or Section 2421A of FOSTA, *id.* § 2421A. 47 U.S.C. § 230(e)(5).

Woodhull argues that selective withdrawal of Section 230 immunity only for those who speak on disfavored subjects like the promotion of prostitution and sex trafficking violates the First Amendment. Once again, Woodhull's argument fails.

To start, FOSTA does not criminalize promoting prostitution broadly. It only punishes aiding or abetting the "prostitution of another person," which has a much narrower reach. *See* Section IV.B., *supra*.

As for Woodhull's argument that Section 230(e)(5) selectively withdraws immunity on the basis of speech's content or viewpoint, that misunderstands the law. Sections 230(e)(5)(A)–(B) withhold immunity only for content that violates the federal criminal prohibition on sex trafficking in Section 1591, and Woodhull makes no argument that Section 1591 itself is unconstitutional under the First Amendment or otherwise. Neither does Woodhull explain how denying immunity for speech integral to criminal conduct would trench on the First Amendment.

Nor did the amendment make a material or selective change in the scope of immunity. Section 230's text has always withheld immunity for speech that violates federal criminal law. 47 U.S.C. § 230(e)(1). Woodhull brings no constitutional challenge to Section 230(e)(1)'s original withholding of immunity for violations of all federal criminal laws, including Section 1591. And Woodhull does not argue that Section 230(e)(1)'s original withholding applies only to federal laws in effect at the time of Section 230's enactment. That means that Section 230(e)(1)'s withholding of immunity automatically applies to new criminal laws such as Section 2421A as a textual matter. That automatic inclusion of all new criminal laws belies Woodhull's claim of selective targeting based on content.

Congress was explicit in FOSTA that Section 230's immunity provision "was never intended to provide legal protection" to websites that unlawfully promote prostitution or assist traffickers, and accordingly determined that

"clarification * * * [wa]s warranted to ensure that such section does not provide such protection to such websites." 47 U.S.C. § 230 note. Congress amended Section 230 in response to the many court decisions immunizing websites hosting unlawful speech in a manner that was deemed to be contrary to Congress's original design. *See Woodhull II*, 948 F.3d at 367–368 (explaining that courts frequently held that Section 230 prevented liability for violations of federal law). So all FOSTA does is clarify and reinforce the prior exclusion of immunity within the specific context of sex trafficking, and explain that the limit on immunity extends to civil liability as well.

Nothing in the First Amendment required Congress to confer Section 230 immunity on speech that violates federal criminal laws in the first place, and nothing in the First Amendment ossifies such immunity once granted against any later clarification.

## VII

In addition to its overbreadth and vagueness challenges, Woodhull asserts that, as regulations of speech, Sections 2421A and 1591(e)(4) do not survive strict scrutiny. But those Sections, as we have interpreted them in response to the challenges raised, only cover speech integral to criminal conduct, which does not receive First Amendment protection. *See Hansen*, slip op. at 18 ("Speech intended to bring about a particular unlawful act has no social value; therefore, it is unprotected."); *Stevens*, 559 U.S. at 468 (First Amendment allows restrictions on the content of "speech integral to

criminal conduct"). Thus, Woodhull's strict scrutiny challenge must be rejected.

## VIII

For all of the foregoing reasons, the district court's judgment is affirmed.

*So ordered.*